**Benjamin PEAK, Appellant,**

v.

**Joseph S. PETROVSKY, Warden, United States Medical Center for Federal Prisoners, and United States Parole Commission, Appellees.**

No. 83–2346.

United States Court of Appeals,
Eighth Circuit.

Submitted May 7, 1984.

Decided May 25, 1984.

Marsha J. Murphy, Jolley, Moran, Walsh, Hager & Gordon, Kansas City, Mo., for appellant.

Robert G. Ulrich, U.S. Atty., David C. Jones, Asst. U.S. Atty., Springfield, Mo., for appellees.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and ARNOLD, Circuit Judge.

ARNOLD, Circuit Judge.

Benjamin Peak appeals from the District Court's [1] dismissal of his 28 U.S.C. § 2241 petition for writ of habeas corpus. For reversal he contends that (1) the United States Parole Commission abused its discretion in classifying the severity of his offense as "Greatest I," and (2) the Government failed to abide by express or implied promises regarding parole which induced his guilty plea. We hold that the Parole Commission acted within its broad discretionary authority, and we therefore affirm.

I.

In 1976, Peak and several co-conspirators destroyed two Indiana supermarkets by means of incendiary devices, fraudulently collected insurance benefits in excess of $69,000 for damages to one market, and attempted to collect over $57,000 for the other. The Government obtained a six-count indictment against Peak in 1981. Pursuant to a plea-bargain agreement, he pleaded guilty to one count of mail fraud in violation of 18 U.S.C. § 1341. That count charged Peak with defrauding an insurance company by destroying a business and then filing a claim for $69,854.05 by mail for the damages. In return for his guilty plea, the Government expressly agreed not to recommend a sentence, to dismiss all other counts of the indictment with prejudice, and to make any further cooperation by Peak known to the court at the time of sentencing. The agreement apparently did not mention parole.

In January 1982, Peak was sentenced to five years' imprisonment.[2] Thereafter, the United States Parole Commission rated Peak's offense as "Greatest I severity" because it involved arson and explosive detonation on two occasions, and property of-

---

1. The Hon. William R. Collinson, Senior United States District Judge for the Eastern and Western Districts of Missouri.

2. Peak's sentence has since been reduced to four years by the sentencing court.

fenses (fraud) in excess of $127,000. The Commission recommended that Peak's confinement continue until expiration of his sentence. Peak unsuccessfully appealed his classification to the Regional Commissioner and the National Appeals Board. After exhausting his administrative remedies, he filed the present petition for writ of habeas corpus. The District Court dismissed the petition without prejudice on July 26, 1983, and this appeal followed.

## II.

Peak first contends that the Commission abused its discretion by arbitrarily and capriciously classifying his offense as "Greatest I severity."[3] He argues that because he pleaded guilty to only one count of mail fraud and the remaining counts were dismissed with prejudice, the Commission should not have considered information concerning the dismissed counts in determining his offense severity rating. Peak notes that the single mail fraud count on which he was convicted charged him with a property offense (fraud) in an amount less than $70,000. He asserts that his offense should therefore have been classified as "high" or at most "very high" in severity. Under either of these classifications, he would be eligible for immediate parole,[4] though the Commission would still have discretion to fix his time of imprisonment above the guidelines.

The Parole Commission, however, did not act unlawfully in considering conduct underlying the dismissed counts in determining Peak's parole eligibility. The Commission may consider a number of factors in arriving at an appropriate severity rating, including charges dismissed as part of a plea-bargaining agreement and other information in the presentence report.[5] *Edwards v. United States*, 574 F.2d 937, 934–44 (8th Cir.), *cert. dismissed*, 439 U.S. 1040, 99 S.Ct. 643, 58 L.Ed.2d 700 (1978). See also *Melvin v. Petrovsky*, 720 F.2d 9, 11 (8th Cir.1983). *Accord, Robinson v. Hadden*, 723 F.2d 59, 62–63 (10th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1684, 80 L.Ed.2d 159 (1984); *United States ex rel. Goldberg v. Warden, Allenwood Federal Prison Camp*, 622 F.2d 60, 64 (3d Cir.), *cert. denied*, 449 U.S. 871, 101 S.Ct. 210, 66 L.Ed.2d 91 (1980); *Billiteri v. United States Board of Parole*, 541 F.2d 938, 944 (2d Cir.1976). *Cf. Wixom v. United States*, 585 F.2d 920 (8th Cir.1978) (inappropriate for Commission to consider information in presentence report which was objected to at sentencing and expressly disavowed by sentencing judge).

■ As a result, we cannot say the Commission abused its discretion in classifying Peak's offense as "Greatest I" under previous guidelines, or as "Category Six" under the present guidelines. Current regulations addressing property destruction by arson or explosives provide:

(a) If the conduct results in serious bodily injury or if "serious bodily injury is clearly intended," grade as Category Seven;

(b) If the conduct involves any premises where persons are present or likely to be present or a residence, building, or other structure, or results in bodily injury, grade as Category Six;

---

**3.** Appellant's parole classification was re-evaluated in March 1983, under the guidelines found at 28 C.F.R. § 2.20, effective January 31, 1983. Under these guidelines, "Greatest I" offenses are now called "Category Six" offenses. The Commission again classified Peak's offense severity rating as Category Six. Appellant has not objected to application of the current guidelines, nor does it appear that the language of the new guidelines requires a result different from that produced by the previous guidelines.

**4.** Because Peak has a salient factor score of 10, a "high" severity rating (now Category Four)

would require him to serve between 14 and 20 months. A "very high" rating (Category Five) would require 24 to 36 months. His present rating calls for 40 to 52 months of incarceration. Peak's projected release date is August 1985.

**5.** 18 U.S.C. § 4207 (1976) lists the material the Parole Commission "shall consider, if available and relevant," in making a parole determination. This list includes presentence investigation reports, and "such additional relevant information ... as may be reasonably available."

(c) Otherwise, grade as "property destruction other than listed above" but not less than Category Five.

28 C.F.R. § 2.20, Chapter 3 (1983). The Commission specifically found that Peak's offense behavior "involved two arsons in which gasoline was ignited by electrical devices and subject fraudulently collected $69,000 in one instance and attempted to collect $57,000 in the other." The minimum severity rating for destruction by arson of a single building is Category Five. Regulations provide that where, as here, the offense behavior involved multiple separate offenses, the severity rating may be increased. *Id.* at Chapter 13(2). In the circumstances, it was reasonable for the Parole Commission to conclude that Category Six was an appropriate severity rating under either paragraph (b) or (c).

### III.

Peak next contends that by permitting the Parole Commission to consider the charges dismissed with prejudice, the Government broke the agreement which induced his guilty plea.[6] According to Peak, the Commission's use of the dismissed charges in effect eliminated the implied and anticipated benefit of the agreement, and indirectly allowed the Commission to do what the Government promised not to do.

If the Government makes a promise regarding parole which induces a guilty plea, the Government must fulfill that promise. See *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). Thus, even if the Commission may normally consider offenses charged in dismissed counts, it may not consider them if doing so would violate a prior plea agreement. See *id.; Robinson v. Hadden, su-*

*pra,* 723 F.2d at 63. In the present case, Peak may have assumed that information concerning the dismissed counts would not be used in determining his parole eligibility, but he neither asserts, nor does the record reflect, that the Government agreed to link the dismissal with prejudice to his eligibility for parole. Indeed, Peak does not appear to be raising a factual issue concerning the Government's representations to him. Rather, he relies principally on the fact that the dismissal was "with prejudice." But the "with prejudice" language, standing alone, "does not bar comment in the presentence report about the charges in the dismissed counts, and does not prevent consideration of [the conduct underlying those counts] by the Parole Commission ...." *United States ex rel. Goldberg v. Warden, Allenwood Federal Prison Camp, supra,* 622 F.2d at 65. See also *Robinson v. Hadden, supra,* 723 F.2d at 62–63. In the circumstances, Peak's contention that the Government broke an implied provision of the plea agreement is without merit.[7]

Peak also contends that the Government broke the express provisions of the plea agreement by failing to advise the court of his cooperation in the prosecution of his co-defendants. As a result, he says, his cooperation was not part of the record before the Parole Commission. Because this issue was not raised before the District Court, it need not be considered here. We have reviewed Peak's other contentions and find them to be without merit.

Affirmed.

---

**6.** The Government asserts that a petition for habeas corpus under 28 U.S.C. § 2241 is not the proper procedural vehicle to bring an alleged breach of a plea-bargain agreement before the federal court. However, because Peak's contention is essentially that the manner of *execution* of his sentence is unlawful by reason of the Government's breach, the claim is properly presented. See *Cohen v. United States,* 593 F.2d 766, 770–71 (6th Cir.1979).

**7.** If sentencing courts would clearly inform defendants in this situation that the facts underlying any dismissed counts may still be considered for parole purposes, some misunderstanding could be avoided in the future. We commend this procedure to the district courts, but our cases have not held that failure to follow it is a ground for setting aside a conviction or modifying a parole decision.