In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 18-2541

TYRUS MCNAIR,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

_____

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:17-CV-494 — **William C. Lee**, *Judge.*

_____

ARGUED DECEMBER 9, 2019 — DECIDED JUNE 22, 2020

_____

Before EASTERBROOK, ROVNER, and SCUDDER, *Circuit Judges*.

EASTERBROOK, *Circuit Judge.* When Tyrus McNair was sentenced in 2003 for a serious drug crime, the district court calculated his range under the Sentencing Guidelines at 324 to 405 months and sentenced him to 360 months. Calculation of the range was uncontested except for one thing: McNair was placed in Criminal History Category II as a result of a

1992 conviction in Indiana for driving without a license. He asserted that this conviction is invalid and that he should be in Category I, which would have produced a range of 292 to 365 months. The district court declined to entertain a collateral attack on the state conviction, see *Custis v. United States*, 511 U.S. 485 (1994), and used the 324 to 405 month range. We affirmed. No. 03-3034 (7th Cir. Jan. 8, 2004) (nonprecedential disposition).

In 2005 McNair filed a collateral attack under 28 U.S.C. §2255, again disputing use of the state conviction. The district court denied this petition, informing McNair that he needed to contest that conviction in state court. Later McNair filed a flurry of other motions in this federal prosecution; all were unsuccessful and some were dismissed as unauthorized successive collateral attacks. See 28 U.S.C. §§ 2244, 2255(h).

In 2007 McNair asked a state judge to vacate his conviction for driving without a license. That motion was denied. He tried again in 2017; this time he prevailed. McNair came back to federal court with the argument that he is entitled to be resentenced, something that *Custis* and *Johnson v. United States*, 544 U.S. 295 (2005), suggest is appropriate after a state court sets aside a conviction that affected the federal sentence. But the district judge dismissed McNair's application as an unauthorized successive collateral attack. 2018 U.S. Dist. LEXIS 107803 (N.D. Ind. June 28, 2018). McNair contended that collateral attacks are unaffected by sections 2244 and 2255(h) when it would have been premature to file earlier. See *Panetti v. Quarterman*, 551 U.S. 930 (2007); *Magwood v. Patterson*, 561 U.S. 320 (2010). The district judge was unpersuaded. He read *Unthank v. Jett*, 549 F.3d 534 (7th Cir. 2008),

and *Purvis v. United States*, 662 F.3d 939 (7th Cir. 2011), to hold that *Panetti* does not apply to a claim based on a state court's vacatur of a criminal conviction.

We do not understand them so. *Unthank* dealt with a petition under 28 U.S.C. §2241. Unthank argued that a state court's vacatur of a criminal conviction entitled him to be resentenced in federal court. He had filed and lost at least one petition under §2255 and believed that this made §2255 "inadequate or ineffective" (§2255(e)) to test his sentence, entitling him to use §2241. *Unthank* holds that this is wrong—that §2255 is the proper means to contest sentences on the basis of a change in one's criminal record. Because Unthank was proceeding under §2241 and insisted that he could not use §2255, we did not consider whether that assumption was correct. *Unthank* does not cite *Panetti* or discuss the possibility that a change in one's criminal record permits a new §2255 motion.

*Purvis* likewise is irrelevant. Purvis filed a §2255 motion while simultaneously asking a state court to vacate one of his convictions. The district court dismissed the federal motion as premature, and we reversed because that decision exposed Purvis to a needless risk: that a later §2255 motion would be dismissed as untimely, successive, or both. We held that, while the request is pending in state court, the federal proceeding should be stayed, under the approach of *Rhines v. Weber*, 544 U.S. 269 (2005). The opinion in *Purvis* concludes that a stay under *Rhines* is cleaner than leaving the prisoner to argue, when filing a second motion, that *Panetti* authorizes this additional step. *Purvis* does not hint that this court would have rejected an argument based on *Panetti* had a new collateral attack been filed; having held that the origi-

nal collateral attack should continue, we did not need to de-
cide that question.

And then there is *United States v. Obeid*, 707 F.3d 898 (7th
Cir. 2013). Obeid asked a district court to reduce his sentence
because his twin brother had received a reduction for coop-
erating with the prosecutor. He asked for this relief under
Fed. R. Crim. P. 35(b), and we held that the Rule is available
only to someone who provides information of value—
something that Obeid had not done. The right basis for seek-
ing relief would have been §2255. *Obeid* discussed *Panetti* at
length, see 707 F.3d at 901–03, and concluded that it permits
new collateral attacks when new factual developments give
rise to new theories that were unavailable earlier. Because
*Johnson* treats the vacatur of a state conviction as a new
"fact" rather than a new legal development, the analysis of
*Obeid* supports McNair's position. *Obeid* did not suggest that
it was modifying or overruling *Unthank* or *Purvis*. It did not
need to, because they do not say anything different from
*Panetti* or *Obeid*.

At least three other courts of appeals have considered
whether a §2255 petition based on the vacatur of a state con-
viction may be maintained as an "initial" §2255 motion on
the theory that the claim was unripe until the state court act-
ed. All three hold that it may be. *United States v. Hairston*, 754
F.3d 258, 262 (4th Cir. 2014); *In re Weathersby*, 717 F.3d 1108,
1111 (10th Cir. 2013); *Stewart v. United States*, 646 F.3d 856,
865 (11th Cir. 2011); *Boyd v. United States*, 754 F.3d 1298, 1302
(11th Cir. 2014). The district judge believed that *Unthank* and
*Purvis* produce a conflict among the circuits. It should be
clear by now that they do not. We agree with our colleagues
on the Fourth, Tenth, and Eleventh circuits that *Panetti* gov-

erns the use of §2255 to request resentencing following a state court's vacatur of a conviction that had increased the federal sentence.

This does not mean, however, that McNair is entitled to a remand. *Obeid* did not stop with its conclusion that a motion under §2255 is the right way to raise new factual developments. We ruled against Obeid because he took too long to act. Section 2255(f)(4) provides that a motion must be brought within a year of "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." *Johnson* addressed how that date is determined:

> That leaves us with the question of how to implement the statutory mandate that a petitioner act with due diligence in discovering the crucial fact of the vacatur order that he himself seeks. The answer is that diligence can be shown by prompt action on the part of the petitioner as soon as he is in a position to realize that he has an interest in challenging the prior conviction with its potential to enhance the later sentence. The important thing is to identify a particular time when the course of the later federal prosecution clearly shows that diligence is in order. That might be the date the federal indictment is disclosed, the date of judgment, or the date of finality after direct appeal. Picking the first date would require the quickest response and serve finality best, but it would produce some collateral litigation that federal acquittals would prove to have been needless, and it shares the same disconnection from the existence of a §2255 claim as the Government's view of the relevant "facts". If we picked the third date, collateral litigation would be minimized, but finality would come late. This shapes up as a case for choosing the bowl of porridge between the one too hot and the one too cold, and settling on the date of judgment as the moment to activate due diligence seems best to reflect the statutory text and its underlying concerns. After the entry of judgment, the subject of the §2255 claim has come into being, the significance of inaction is clear, and

> very little litigation would be wasted, since most challenged fed-
> eral convictions are in fact sustained.

544 U.S. at 308–09 (cleaned up). Johnson lost because more
than three years elapsed between sentencing and his request
for relief in state court. *Id.* at 311. The Justices added that
even 21 months (the time between the end of Johnson's ap-
peal and his request in state court) would have been too
long. *Ibid.* By this standard, McNair falls *way* short of due
diligence.

*Johnson* tells us that the need for diligent action begins on
the date of judgment—which for McNair is July 22, 2003. He
first asked the state judiciary for relief in July 2007, when he
filed in the state criminal case what he styled a "Motion for
Writ of Error Coram Nobis". That's already four years, a de-
lay *Johnson* holds is excessive. A state magistrate denied this
motion, and McNair did not appeal. For the next 9½ years he
did nothing in state court. Early in 2017 a lawyer entered an
appearance for McNair and filed a new petition asking the
state judiciary to act.[†] Within a week the state judge vacated
the conviction, on the prosecutor's confession of error. By
the time McNair came back to federal court in April 2017,
almost 14 years had passed since the event that, per *Johnson*,
requires diligent action. That is as un-diligent as can be.

McNair's counsel tell us that he didn't appreciate the
difference between state and federal judges, which is why he
kept peppering the federal judge with motions while all but

---

[†] The lawyer who represented McNair was Marcia Linsky, who as a
Magistrate Judge in Allen County had denied McNair's motion in 2007.
Whether Indiana's rules of legal ethics permit a lawyer to represent
someone seeking to contest a decision that the lawyer made while on the
bench is a question we need not consider.

ignoring the state court. Yet McNair certainly knew the benefit of having the sentencing range calculated without regard to the state conviction; he asked the federal judge for that relief before sentencing. And the federal judge told McNair that he needed to pursue relief in state court. Suppose McNair just didn't grasp what the judge told him (though he did seek relief in state court in 2007). Still, ignorance of the law does not justify tolling the one-year limitations period in §2255(f), see *Godoski v. United States*, 304 F.3d 761, 762 (7th Cir. 2002) (collecting cases), and we can't see why legal ignorance should be a better excuse if proposed as a substitute for diligence. *Johnson* said as much. 544 U.S. at 311. *Johnson* sets the starting date for action, and 14 years is not diligent. It follows that the district court's decision must be affirmed, though not for that court's reason.

AFFIRMED